UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| C.B., by her guardian and next friend, WILLIAM FARIES; T.F., by his guardian and next friend, NANCY GRAPER; HUMAN SUPPORT SERVICES, an Illinois not-for-profit corporation; and MONROE COUNTY APARTMENTS 4 ASSOCIATION, an Illinois not-for-profit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> VILLAGE OF HECKER, ILLINOIS, an Illinois municipal corporation, <br><br> Defendant. | No. 3:13-cv-01042-MJR-PMF <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

I. INTRODUCTION

1. This is an action for declaratory and injunctive relief and for damages brought pursuant to the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* Plaintiffs seek redress because the defendant, Village of Hecker, Illinois, wrongfully denied a special-use permit and refused to make a reasonable accommodation to Plaintiff Monroe County Apartments 4 Association, an Illinois not-for-profit corporation, to permit Plaintiff Human Support Services, an Illinois not-for-profit corporation (hereinafter jointly "HSS"), to construct and operate two small group homes within the Village, each for four persons with developmental disabilities, including Plaintiffs C.B. and T.F. Defendant's conduct is in violation of Plaintiffs' rights under the Fair Housing Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

1

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 3613. Appropriate declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in this Court because all the parties are located in the Southern District of Illinois and the acts described herein took place within the Southern District of Illinois.

## III. PARTIES

4. Plaintiff C.B. is an adult person who resides in Monroe County, Illinois. C.B. is developmentally disabled and is a "handicapped" person within the meaning of 42 U.S.C. § 3602(h). C.B. brings this action by her court-appointed guardian and next friend, William Faries.

5. Plaintiff T.F. is an adult person who resides in Monroe County, Illinois. T.F. is developmentally disabled and is a "handicapped" person within the meaning of 42 U.S.C. § 3602(h). T.F. brings this action by his court-appointed guardian and next friend, Nancy Graper.

6. Plaintiff Human Support Services is a not-for-profit corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 988 N. Illinois, Waterloo, Illinois 62298.

7. Plaintiff Monroe County Apartments 4 Association ("MC4A") is a not-for-profit corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 988 N. Illinois, Waterloo, Illinois 62298.

8. The board of directors of Human Support Services has an executive committee that serves as the board of directors of MC4A. Human Support Services uses MC4A as a

2

separate legal entity to hold legal title to certain real property assets. Any facilities existing on such real property are operated exclusively by Human Support Services to carry out its mission of serving persons with disabilities.

9. Defendant Village of Hecker, Illinois (hereinafter "Defendant Village") is a village within the Southern District of Illinois that is organized under laws of the State of Illinois and is a body politic and corporate.

IV. STATEMENT OF THE CASE

*Defendant Village's Zoning Ordinance*

10. Defendant Village exercises zoning authority over land within its boundaries, including the tracts of real property owned by HSS that are the subject of the special-use permit described herein. Defendant Village's zoning ordinances include the following:

40-2-2 DEFINITIONS:

Family:

(A) A single individual doing his own cooking and living upon the premises as a separate dwelling or housekeeping unit; or

(B) A collective body of persons doing their own cooking and living together upon the premises as a separate housekeeping unit in a domestic relationship based upon birth, marriage, adoption or employment as domestic servants; or

(C) A group of not more than three (3) unrelated persons doing their own cooking and living together on the premises as a separate housekeeping unit pursuant to a mutual housekeeping agreement (not including a group occupying a boarding or rooming house, club, fraternity or hotel).

40-9-2 INITIAL CERTIFICATES OF ZONING COMPLIANCE. Upon the effective date of this Code, no land shall be developed, no new use or structure shall be established or erected, and no existing use or structure shall be enlarged, extended, altered, relocated or reconstructed until an initial certificate of zoning compliance has been issued. The Administrator shall not issue an initial certificate of zoning compliance unless he determines that the proposed activity conforms to the applicable provisions of this Code.

40-9-5 <u>RELATIONSHIP TO BUILDING PERMITS</u>. Upon the effective date of this Code, no building permit for the erection, enlargement, extension, alteration, or reconstruction of any structure shall be issued until the applicant for such permit has property obtained an initial certificate of zoning compliance pertaining to such work.

*HSS' Group Home Project*

11. HSS is engaged in the business of providing mental health services, services to persons with developmental disabilities, and substance abuse assistance. One of its primary activities is to provide residential habilitation services and assistance to persons with developmental disabilities, which are designed to integrate such persons into the community.

12. In programs operated by HSS, a "person with a developmental disability" is an individual with a physical or mental impairment that originates before age 18 and substantially limits one or more of such person's major life activities. The most common developmental disabilities of clients served by HSS are mental retardation, autism spectrum disorder, cerebral palsy, and epilepsy.

13. Currently, HSS operates a supportive housing program in Monroe County in which approximately 60 persons reside, including upwards of 20 persons with developmental disabilities in individual apartments. Most of these persons also participate during weekdays in the sheltered workshop in Waterloo that is also operated by HSS. Staff from HSS are available and on-call if these persons in the individual apartments need intermittent assistance at night or on weekends.

14. The board of directors of HSS has sought for at least the past five years to expand the residential services provided by the agency to include use of small group homes. Such expansion is important and necessary to HSS because many individuals now served by the agency require a greater level of supervision than can be provided when the disabled person resides in an individual apartment. When a person with developmental disabilities grows older

or suffers impairments that interfere with activities of daily living, HSS expects that it can maintain this person in the community, and outside of a nursing home, if the person resides in a group home setting. HSS considers providing this added new level of supportive housing to be an important part of its core mission.

15.   New funding from the Illinois Department of Human Services has recently become available that permits development and funding of small group homes of four or fewer persons pursuant to the Community Integrated Living Arrangement ("CILA") program. The CILA program is a Home and Community-Based Services Waiver Program funded in part by Medicaid, 42 U.S.C. § 1396n(c)(1), and is designed to permit persons with developmental disabilities who would otherwise be eligible to reside in institutions to live in the community. HSS is informed and believes that this particular CILA funding formula is the first such program allowing adequate funding for new small group homes in Illinois in at least the past ten years.

16.   Eight persons have been selected by HSS staff to reside in the two proposed group homes. All of these persons, including C.B. and T.F., are developmentally disabled. The group home residents intend to live together as a family unit, sharing meals and recreational and leisure activities, and most, if not all of them, will continue to work at the sheltered workshop operated by HSS. All residents of the two proposed group homes, including C.B. and T.F., intend for this to be their permanent home.

17.   C.B. is a 54-year-old female who lives in an apartment owned and operated by HSS in the City of Waterloo, Illinois. She is developmentally disabled, having been diagnosed with mild retardation at infancy. C.B.'s disability is further complicated by her recent diagnosis of liver cancer. She is currently undergoing chemotherapy, which causes significant digestive problems and considerable pain and discomfort. Because of her disability and illness, C.B. is

unable to cook or make basic decisions for herself and is unable to schedule or administer the medications she must receive several times a day. Accordingly, she now requires a higher level of care from HSS staff. She has worked at the sheltered workshop operated by HSS and has participated in other HSS programs for over 18 years. Due to her age and present illness, she is unable to perform work at the sheltered workshop, but she is in attendance daily whenever the facility is open. She has also participated in HSS' "assisted living" housing program for over 18 years because she is not able to live independently without significant support from others.

18. C.B. needs to live in a more structured and supervised setting for her own safety. Due to her age, disability, and cancer diagnosis, daily living for C.B. has become increasingly difficult. Both the HSS staff and C.B.'s guardian, William Faries, believe that she would be much more happy, comfortable and safe in the group home facility where C.B. would receive live-in assistance to address her growing needs. If she cannot move into the group home in the near future, both HSS and William Faries are concerned that C.B. will have to move to a nursing home.

19. C.B. wants to continue to receive care from HSS, the organization with which she has participated for over 18 years. She is especially eager to move to the group facility because she wants to continue to receive care from the specific staff members that have cared for her for the past several years. It is anticipated that these individual staff members will assist C.B. on a full-time basis at her group home once the homes are in operation.

20. T.F. is a 58-year-old male who lives in an apartment owned and operated by Plaintiff HSS in the City of Waterloo, Illinois but needs to live in a more structured and supervised setting for his own safety. He is severely mentally retarded, having been diagnosed with Down syndrome at birth, and is visually and hearing impaired. He is limited verbally,

suffers from arthritis, and ambulates with either a walker or a wheelchair. He has worked at the sheltered workshop operated by HSS for over 39 years. He has participated in HSS' "assisted living" housing program for over six years because he is not able to live independently without significant support from others.

21.     T.F. now has significant difficulty with activities of daily living, such as dressing himself, bathing, and preparing meals. He is also unable to schedule or administer the medications he must receive several times a day. Because of his disabilities, he is unable to make basic decisions for himself. T.F.'s increasing limitations have substantially limited his ability to access all areas of his home – most significantly, the bathing and kitchen areas. His legal guardian is his sister, Nancy Graper, a resident of Red Bud, Illinois. Nancy Graper is informed and believes that T.F. will have to move to a nursing home in the near future if he cannot move to a group home.

22.     T.F. is ready and eager to move into a Hecker group home as soon as it is in operation. First, his guardian Nancy Graper will have more convenient and frequent access to him as the distance between Hecker and Red Bud is shorter than between Red Bud and Waterloo. Second, both of the roommates with whom T.F. has lived for the past six years also intend to move to a group home in Hecker when it is operation. T.F. also wants to continue receiving care from HSS, the organization that has looked after him for over 39 years. Both of T.F.'s parents received care in a nursing home before their deaths, and T.F. is terrified at the prospect of having to move into a nursing home himself.

*The Zoning Dispute*

23.     In early 2013, the board of directors of HSS decided to commence development of two new CILA group homes in the Village of Hecker, Illinois. The board decided to locate

the two proposed new homes next to each other in order to maximize the ability of staff to serve the needs of the prospective residents. The board of directors of HSS intended for the two homes to primarily serve residents of Monroe County.

24. HSS commissioned an architect to design homes that met universal design specifications for accessibility. As finally designed, the homes will be constructed with structural insulated panels, which are energy efficient, permit a shorter construction time than wood-frame construction, and are more energy efficient than standard construction. Each home will have a wing of four individual bedrooms (but no master bedroom), specially-designed accessible bathing facilities, a large shared kitchen/dining room/living room, and a "safe" room for the residents in case of weather emergencies. The two homes were intended to be move-in ready within four months of receipt of zoning approval. If construction cannot begin immediately, construction costs will increase and completion of construction may be substantially delayed because of adverse winter weather and construction conditions.

25. The two proposed group homes are compatible with other land uses in the area. The group homes are designed to closely resemble other single-family residences in the neighborhood. From the exterior of the group homes, there will be nothing to indicate that these homes will be occupied by persons with disabilities. The builder who developed the Freedom Village subdivision retained architectural approval over any buildings planned for construction in the subdivision and has reviewed and approved the plans for the two proposed group homes.

26. HSS advised the Mayor of Defendant Village of its plans in April 2013. Thereafter Robert Cole, executive director of Human Support Services, was invited to attend a Village board informational meeting on April 9, 2013. More than 30 persons attended that meeting, virtually all of whom expressed opposition to the proposed group homes. The tone at

the meeting was hostile, and two Sheriff's deputies were present to keep order at the meeting. Residents complained that the two new homes were "out of character with the neighborhood," that their property values would decline if the group homes were located with their Freedom Village subdivision, and that the group homes' residents would not be safe because of the distance from the Village of Hecker to emergency services in Belleville and elsewhere. No one other than Robert Cole spoke in favor the group homes. This meeting lasted approximately four hours.

27.    Plaintiff Monroe County Apartments 4 Association filed a special-use permit application and a building permit application with Defendant Village on July 16, 2013, requesting the permits to build and operate two group homes, each for four persons with disabilities. The permits concerned Lots 7 and 8 in Freedom Village, a subdivision within the Village of Hecker, which was zoned SR-1, for single-family residences. The permit application was accompanied by architectural plans and specifications for the two new homes. The combined cost of real estate and construction for each home was anticipated to be $250,000.00. Each home complied with all building and zoning code requirements of Defendant Village, except that four unrelated persons – rather than three – intended to reside in each home.

28.    A public hearing on Plaintiff's special-use permit application was held before Defendant Village's Zoning Board of Appeals on September 3, 2013. According to Defendant Village's zoning code, its Zoning Board of Appeals is required to conduct a public hearing and issue an advisory report to the Village Board of Trustees concerning all applications for a special-use permit.

29.    Sworn testimony was taken at the Zoning Board of Appeals hearing, including testimony from Robert Cole, executive director of Human Support Services, requesting that

Defendant Village grant Plaintiffs HSS and Monroe County Apartments 4 Association a reasonable accommodation from Defendant Village's zoning rules, policies and practices so that four unrelated persons could reside in each dwelling.

30. Neighbors of the proposed group homes appeared at the foregoing hearing to complain about the two homes. The complaints of the neighbors were irrational and based upon groundless fear of persons with disabilities. The reasons stated by objectors were virtually the same as those stated at the April 9 Village board informational meeting. The objections dealt not with the request for reasonable accommodation but instead generally with the very existence of the group homes, including that the group homes were inconsistent with the neighborhood character, that the group homes would decrease property values, that the residents of the group homes would not be safe in a weather emergency such as an eight-foot snowstorm because the Village does not plow streets unless there are at least three inches of snow on the ground, and that the group home residents would not be safe because the Village is far from emergency medical services in Belleville and elsewhere. The objections also expressed concern that the Village would need to spend $500,000.00 to build sidewalks from the proposed homes to its village park so that the group home residents could get to the park in wheelchairs and that, if state funding for these homes were eliminated, the homes could become derelict or dangerous abandoned buildings as happened with the former Hecker public school building that was sold by the local school district many years ago and is now vacant and falling down.

31. At the conclusion of the hearing, Defendant Village's Zoning Board of Appeals voted to recommend approval of HSS' special-use permit application, finding among other things as follows:

    A. "[T]he allowance of four, rather than three, unrelated individuals to reside in a single family residence, is otherwise identical to the existing allowed

use, and therefore will adequately protect the public health, safety, and welfare, and the physical environment"; and

C. "Any effect that the proposed special use would have on the value of neighboring property is unknown, and in any event the requirements of the federal Fair Housing Act that the Village make 'reasonable accommodations' would outweigh any negative effect."

32. Pursuant to Defendant Village's Zoning Ordinance, its Board of Trustees has final authority on zoning matters and acts on and approves or denies all special-use permit applications and all other zoning applications.

33. A petition from community residents was submitted to Defendant Village on or about Sept. 10, 2013 in which approximately eight residents threatened to take legal action against the Village if permission were granted to permit construction of the two group homes in the Freedom Village subdivision.

34. HSS' special-use permit application was heard by Defendant Village's Board of Trustees on September 10, 2013. On that date the Board of Trustees voted to go into executive session on the basis of the threatened lawsuit against the Village. Thereafter, upon returning to public session and without any public discussion, Defendant Village's Board of Trustees unanimously voted to deny the special-use permit. Since that date, Defendant Village has advised HSS in writing that it will withhold a building permit for construction of the two group homes.

V. CAUSES OF ACTION

### COUNT ONE: FAIR HOUSING ACT

35. Plaintiffs reallege and incorporate by reference paragraphs 1-34 herein.

36. The two group homes are "dwellings" within the meaning of 42 U.S.C. § 3602(b), and the prospective residents of the home, including Plaintiffs C.B. and T.F., are "handicapped" within the meaning of 42 U.S.C. § 3602(h).

37. Defendant Village's actions described above were intentional and taken with willful disregard for Plaintiffs' rights.

38. Because Defendant Village's Board of Trustees is vested with the final authority for zoning decisions, the Board of Trustee's actions described above constitute the policy of Defendant Village.

39. Defendant Village's actions described above were taken under color of state law.

40. Defendant Village's actions in denying HSS' application for a special-use permit and refusing to grant a reasonable accommodation to permit construction and operation of the two group homes has an adverse impact upon persons with handicaps, compared to persons without handicaps, and prevents some persons with handicaps from living in the home of their choice within the Village, in violation of 42 U.S.C. § 3604(f)(1).

41. By denying HSS' application for a special-use permit and refusing to grant its request for a reasonable accommodation to permit the construction and operation of the two group homes, Defendant Village refused to make reasonable accommodations to its rules, policies, and practices, which accommodations are necessary to afford Plaintiffs and other persons with handicaps an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

42. The accommodations requested would not have imposed an undue administrative burden or expense upon Defendant Village and would not have resulted in a fundamental

alteration of Defendant Village's Zoning Ordinance, since the group home is compatible with the residential character of the neighborhood.

43. Defendant Village's actions described above coerced, intimidated, threatened, or interfered with HSS in the exercise or enjoyment of, or on account of its having exercised or enjoyed, or on account of its having aided or encouraged others in the exercise or enjoyment of, the rights granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.

44. Plaintiffs are aggrieved persons, as defined in 42 U.S.C. § 3602(i), who have suffered, or may suffer, economic loss, emotional distress, and loss of their civil rights as a result of Defendant Village's actions described above.

45. Plaintiffs are without an adequate remedy at law.

46. Plaintiffs will suffer irreparable harm if Defendant Village refuses to issue a special-use permit to HSS.

47. WHEREFORE, Plaintiffs pray that this Court:

    A. Declare that the refusal of Defendant Village to either issue a special-use permit or grant a reasonable accommodation permitting the construction and operation of the two group homes, each for four persons with disabilities or handicaps, unlawfully discriminates against Plaintiffs and violates the Fair Housing Act;

    B. Grant a preliminary and permanent injunction enjoining Defendant Village to issue a special-use permit and a certificate of zoning compliance to HSS permitting it to construct and operate two group homes, each for four persons with disabilities or handicaps, in the Village of Hecker, Illinois;

    C. Award Plaintiffs such damages as would fully compensate them for their injuries caused by Defendant Village's discriminatory housing practices;

D. Award Plaintiffs their costs, expenses, and reasonable attorney's fees; and

E. Grant any additional relief as the Court deems just and proper.

## COUNT TWO: AMERICANS WITH DISABILITIES ACT

48. Plaintiffs reallege and incorporate by reference paragraphs 1-47 herein.

49. Plaintiff C.B. is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2).

50. Plaintiff T.F. is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2).

51. Defendant Village is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

52. Defendant Village's zoning activities, including the enactment of zoning ordinances, and any administrative processes, hearings, findings, and recommendations by either its Zoning Administrator or its Zoning Board of Appeals, and decisions by its Village Board of Trustees, are "services, programs, or activities" of a public entity within the meaning of 42 U.S.C. § 12132.

53. Defendant Village's actions described above excluded Plaintiffs from participation in, denied Plaintiffs the benefits of, and subjected Plaintiffs to discrimination in the provision of its services, programs, or activities in violation of 42 U.S.C. § 12132.

54. Plaintiffs are "person[s] alleging discrimination on the basis of disability" within the meaning of 42 U.S.C. § 12133 who have suffered, or may suffer, injury by the actions of Defendant Village described above.

55. WHEREFORE, Plaintiffs pray that this Court:

    A.    Declare that the refusal of Defendant Village to either issue a special-use permit or grant a reasonable accommodation permitting the construction and operation of the two group homes for four persons with disabilities unlawfully discriminates against Plaintiffs and violates the Americans with Disabilities Act;

    B.    Grant a preliminary and permanent injunction enjoining Defendant Village to issue a special-use permit and a certificate of zoning compliance to HSS permitting it to construct and operate two group homes, each for four persons with disabilities, in the Village of Hecker, Illinois;

    C.    Award Plaintiffs such damages as would fully compensate them for their injuries caused by Defendant Village's discriminatory housing practices;

    D.    Award Plaintiffs their costs, expenses, and reasonable attorney's fees; and

    E.    Grant any additional relief as the Court deems just and proper.

## COUNT THREE: SECTION 504 OF THE REHABILITATION ACT

56.    Plaintiffs reallege and incorporate by reference paragraphs 1-55 herein.

57.    On information and belief, Defendant Village is a recipient of federal financial assistance.

58.    Plaintiff C.B. is an "otherwise qualified individual with a disability" within the meaning of 29 U.S.C. § 794(a).

59.    Plaintiff T.F. is an "otherwise qualified individual with a disability" within the meaning of 29 U.S.C. § 794(a).

60.    Defendant Village's zoning activities, including the enactment of zoning ordinances, and any administrative processes, hearings, findings, and recommendations by either its Zoning Administrator or its Zoning Board of Appeals, and decisions by its Village Board of

Trustees, are "programs or activities" of a unit of local government within the meaning of 29 U.S.C. § 794(b)(1)(A).

61. Defendant Village's actions described above excluded Plaintiffs from participation in, denied them the benefits of, and subjected them to discrimination under a program or activity of Defendant Village solely on account of the disability of Plaintiffs C.B. and T.F. and other disabled individuals who may reside in the group homes, in violation of 29 U.S.C. § 794.

62. Plaintiffs are "persons aggrieved" within the meaning of 29 U.S.C. § 794a(a)(2) who have suffered, or may suffer, injury by the actions of Defendant Village described above.

63. WHEREFORE, Plaintiffs pray that this Court:

A. Declare that refusal of Defendant Village to either issue a special-use permit or grant a reasonable accommodation permitting the construction and operation of the two group homes for four persons with disabilities unlawfully discriminates against Plaintiffs and violates Section 504 of the Rehabilitation Act, as amended;

B. Grant a preliminary and permanent injunction enjoining Defendant Village to issue a special-use permit and a certificate of zoning compliance to HSS permitting it to construct and operate two group homes, each for four persons, in the Village of Hecker, Illinois;

C. Award Plaintiffs such damages as would fully compensate them for their injuries caused by Defendant Village's discriminatory housing practices;

D. Award Plaintiffs their costs, expenses, and reasonable attorney's fees; and

E. Grant any additional relief as the Court deems just and proper.

**JURY DEMAND**

64. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury on all issues triable by a jury.

/s/ *Thomas E. Kennedy, III (lead counsel)*

Law Offices of Thomas E. Kennedy, III, L.C.
906 Olive St., Ste. 200
St. Louis, MO 63101
(314) 872-9041
(314) 872-9043 fax
tkennedy@tkennedylaw.com

Otto J. Faulbaum
111 South Main St., Ste. A
Waterloo, IL 62298
(618) 939-1812
(618) 939-1815 fax
otto@waterloolaw.com